### George v. Fannin
*[Cite as 3 AOA 331]*

*Case No. CA89-09-021*
*Fayette County, (12th)*
*Decided May 21, 1990*

Dennis W. Mattingly, 104 N. Howard Street, P. O. Box 74, Sabina, Ohio 45169, for Plaintiff-Appellee.

R. David Picken, 121 W. Main Street, West Jefferson, Ohio 43162, for Defendant-Appellant.

*Per Curiam.*
This cause came on to be heard upon an appeal, transcript of the docket, journal entries and original papers from the Washington Court House Municipal Court, transcript of proceedings, and appellant's brief, oral argument having been waived.

Now, therefore, the assignments of error having been fully considered are passed upon in conformity with App. R. 12(A) as follows:

Defendant-appellant, Jeannie Fannin, appeals a decision of the Washington Court House Municipal Court granting plaintiff-appellee, Mary Ann George, a $500 judgment against appellant on a contract for the sale and installation of draperies.

On February 1, 1988, appellee agreed to manufacture and install custom made draperies in appellant's home for a total purchase price of $4,000. Appellant selected an appropriate fabric from appellee's swatch book and paid $1,500 upon execution of the contract. In May, appellee

informed appellant that she could not obtain the fabric which appellant selected but could provide a substitute which was slightly different in color. Appellant went to appellee's place of business where she inspected a bolt of the substitute material. When appellant subsequently asked to examine the swatch book to compare her original selection with the substitute fabric, appellee informed her the fabric company had reclaimed the book and it was no longer available. Appellant thereafter agreed to use the substitute material.

Appellee finally completed and installed the draperies in July 1988. According to appellant, the draperies failed to close, did not hang properly, failed to keep out sunlight, heat and cold, and suffered from several other deficiencies. Appellant informed appellee of the deficiencies and went so far as to describe the workmanship as "shoddy." Appellee allegedly told appellant she would make the appropriate adjustments to the draperies. When appellee failed to return and make the necessary adjustments, appellant refused to pay the $500 balance of the contract price. On October 18, 1988, appellee filed a complaint in Washington Court House Municipal Court, Small Claims Division, to recover the balance owed. The matter was transferred to the municipal court's regular docket when appellant filed a counterclaim to recover the $3,500 she had already paid, claiming fraud, inferior quality of material, and unsatisfactory workmanship.

A bench trial was conducted on July 21, 1989. In a decision dated August 15, 1989, the trial court concluded that there was insufficient evidence to prove fraud and that appellant, after rejecting the goods, waived such rejection and accepted the draperies by continuing to use them for approximately one year. The court awarded appellee judgment on her complaint for $500 and dismissed appellant's counterclaim.

In a timely appeal, appellant submits the following two "Issues" which we interpret as assignments of error:

*First Assignment of Error*
"The court finding that the evidence presented at trial was insufficient to prove that plaintiff intentionally defrauded or misled the defendant is against the manifest weight of the evidence."
*Second Assignment of Error*
"The defendant's continued use of the drapery did not constitute a waiver of her rejection of the drapery pursuant to R.C. 1302.66 and therefore an acceptance of the drapery."

Appellant's first assignment of error involves her claim that she was defrauded by appellee and should not be held liable for the $500 contract balance. Appellant alleges that appellee failed to inform her that the substitute material was of inferior quality and had a lower price. The record reveals that although appellant was permitted to inspect a bolt of the substitute material, she was told she could not compare the substitute material with her original choice because the swatch book containing her original selection was no longer available. Appellant testified that appellee informed her that the swatch book had been returned to the fabric company. However, this was clearly contradicted by one appellee's employees who testified that discontinued swatch books were never returned to the manufacturers when new books arrived. Rather, appellee was free to keep the old books and do with them whatever she wished.

There is also uncontradicted evidence that the substitute material was significantly lower in price than appellant's original choice. Despite this difference, appellee never informed appellant that the substitute material cost less nor did appellee reduce the price of appellant's draperies.

The essential elements of an action in fraud are:

"(1) a representation or, where there is a duty to disclose, concealment of a fact;

"(2) which is material to the transaction at hand;

"(3) which is made falsely with knowledge of its falsity;

"(4) with the intent of misleading another into relying upon it;

"(5) with justifiable reliance upon the representation or concealment; and

"(6) a resulting injury proximately caused by the reliance." *Gaines* v. *Preterm-Cleveland, Inc.* (1987), 33 Ohio St. 3d 54; *Burr* v. *Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St. 3d 69, paragraph two of the syllabus. Normally, we would not reverse a judgment which is supported by some competent, credible evidence going to all the essential elements of the case. *C. E. Morris* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279. In the case at bar, appellee did not file a brief. Under such circumstances, we may accept appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action. App. R. 18(C). Having reviewed the record, we are satisfied that appellant's brief and the record both support her allegation of fraud. There was

are satisfied that appellant's brief and the record both support her allegation of fraud. There was an obvious misrepresentation upon which appellant relied to her detriment, resulting in her receiving goods which were inferior to that which she expected. Fraud is a valid defense to a suit on a contract. *Easy Living, Inc.* v. *Whitehead* (1979), 65 Ohio App. 2d 206. We accordingly conclude that appellant's position is well-taken. The first assignment of error is sustained and the $500 judgment granted to appellee is reversed.

In her second assignment of error, appellant contends that her continuous use of the draperies did not constitute a waiver of her rejection of the goods. According to the trial court, appellant had the right to hold and even sell the draperies, but no right to use them, upon "rejecting" the draperies. The court found that her continued use of the draperies for approximately one year constituted a waiver of rejection and acceptance pursuant to R.C. 1302.64(A)(1) and (3), acceptance which appellee ratified by demanding payment and bringing suit to collect the balance due.[1]

Appellant asserts that she revoked her acceptance of the goods under R.C. 1302.66 and her continuous use of the draperies does not amount to a waiver of that revocation. R.C. 1302.66 provides that:

"(A) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it:

"(1) [o]n the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

"(2) [w]ithout discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

"(B) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"(C) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

It is apparent that the trial court and appellant have different interpretations of what transpired following appellee's installation of the draperies. The court viewed appellant's actions as a rejection of the goods which was subsequently waived by appellant's continued use of the draperies. By invoking R.C. 1302.66, appellant takes the position that she accepted the goods and subsequently revoked that acceptance.

The difference between rejection and revocation following acceptance was explained in *Konicki* v. *Salvaco, Inc.* (1984), 16 Ohio App. 3d 40, 43, wherein the court observed that:

"Revocation of acceptance and rejection of tendered goods are not to be confused with one another. The former allows non-conforming goods to be returned and money refunded after acceptance while the latter requires the goods initially be rejected prior to acceptance. Although a distinction exists between the two, they are similar in that they both require timely notice to the seller to make the rejection or revocation effective."

Rejection of goods must be within a reasonable time after their delivery or tender and the seller must be notified of the rejection. *Alliance Wall Corp.* v. *Ampat Midwest Corp.* (1984), 17 Ohio App. 3d 59. Where goods are accepted and the acceptance is subsequently revoked under R.C. 1302.66, there must be revocation within a reasonable time, before any substantial change in the goods' condition, and notice to the seller. *Konicka, supra.* According to appellant, her continued use of the draperies did not waive her right to revoke acceptance under R.C. 1302.66 as long as such continued use was reasonable. *McCullough* v. *Bill Swad Chrysler-Plymouth, Inc.* (1983), 5 Ohio St. 3d 181.

The trial court found that appellant "rejected" the goods. This rejection was followed by appellant's continued use of the draperies. Although appellee never repaired the deficiencies after allegedly offering to do so, appellant did not follow up with additional requests to remedy the defects, did not request instructions from appellee regarding the return of the rejected goods, and continued to use them despite their inadequacy and non-conformity. In fact, appellant testified that she could not recall whether she ever notified appellee to remove the draperies and return her money.

Even assuming, *arguendo*, that this was an acceptance of goods followed by a revocation of acceptance under R.C. 1302.66, it is for the trier of fact -- which, in the case at bar, was the trial court -- to determine whether a buyer's continued use of the goods was reasonable. *McCullough, supra.* It is readily apparent that the court considered appellant's continued use of the draperies for approximately one year an "unreasonable" use. It is equally apparent that appellant ex-

pressed her dissatisfaction with the goods and "rejected" them almost immediately after their delivery and installation. This would reflect that there was no acceptance of the goods and, when appellee failed to make any additional adjustments or repairs, appellant should have done something more than simply withhold payment of the balance due under the contract. Instead, appellant continued to use the draperies despite their non-conformity even after she filed her counterclaim, conduct which the court viewed as inconsistent with appellee's ownership. R.C. 1302.64(A)(3). Where a court's decision in a matter involving R.C. Chapter 1302 is supported by competent credible evidence, a reviewing court will not disturb that judgment. See, *Konicka, supra.*

We accordingly conclude that the trial court's decision on appellant's counterclaim was supported by the evidence and was in accordance with law. The second assignment of error is hereby overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed in part and reversed in part.

It is further ordered that a mandate be sent to the Washington Court House Municipal Court, for execution upon this judgment.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

JONES, P.J., HENDRICKSON and KOEHLER, JJ., concur.

---

[1] R.C. 1302.64 provides that:

"(A) Acceptance of goods occurs when the buyer:

"(1) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or

"* * *

"(3) does any act inconsistent with the seller's ownership; but if such act is wrongful as against seller it is acceptance only if ratified by him."